## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**WHITNEY HOUSTON REESE,**

     **Plaintiff,**

   **vs.**

**CITY OF FOREST PARK,**

**FOREST PARK POLICE DEPARTMENT, FRANK BRANDON (in his individual and official capacity),DWAYNE HOBBS (in his individual and official capacity), COLONEL TOMMY ORR (in his individual and official capacity), CAPTAIN DANIEL PODSIADLY (in his individual and official capacity), MAJOR CHRIS MATSON (in his individual and official capacity),**

     **Defendants.**

Civil Action No. 1:15-cv-337-RWS-WEJ

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

Plaintiff Whitney Houston Reese ("Ms. Reese") brings a Complaint[1] against

seven defendants. They include the City of Forest Park, Ga., its Police Department,

City Manager, Police Chief, Deputy Police Chief, Patrol Division Commander, and

---

[1] [Dkt. 1] hereinafter referenced as "Complaint."

her Shift Supervisor.  She claims all of the defendants are jointly and severally liable for her alleged injuries. Ms. Reese alleges five causes of action: Race and gender discrimination in violation of Title VII and 42 U.S.C. § 1983: disability discrimination and failure to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"); retaliation and harassment in violation of Title VII; and intentional infliction of emotional distress under Georgia law. Ms. Reese's Complaint is the very definition of a "shotgun pleading."

The Court should dismiss the Complaint in its entirety insofar as it fails to raise any plausible claims upon which the court can grant her relief. Her Complaint only alleges conclusions of law masquerading as facts, failing to satisfy the pleading requirements of Fed. R. Civ Pro. Rule 8, and the pleading plausibility standards set by the U.S. Supreme Court's holdings in *Bell Atlantic Corp. v. Twombly*,[2], and *Ashcroft v. Iqbal*,[3] (collectively referred to as ("*Twombly/Iqbal*").

Moreover, Ms. Reese's Complaint is fatally flawed insofar as she fails to allege facts demonstrating essential elements of the causes of action that she brings, nor any facts from which the Court can conclude that any Defendant may be found liable for her claims, or that the qualified immunity of all the Individual Defendants should be pierced.

---

[2] 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).
[3] 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

For these reasons Defendants respectfully submit the Court should dismiss the Complaint in its entirety.

## FACTUAL ALLEGATIONS

The Complaint alleges that Ms. Reese began working for the Forest Park Police Department as a police officer in August 2011.[4] It alleges that she suffered an on-the-job injury in August 2012, and that "[d]ue to the impairment from the injury, [she] is currently classified as a person with a disability under Title I of the ADA."[5] It states that following her injury, Ms. Reese's duties changed from police road duty to administrative work.[6]

*Her Superiors Became "Infuriated" at her Contacting a Workers Compensation Attorney*

The Complaint alleges that in April 2013, Ms. Reese informed her superiors—Defendants Major Chris Matson and Colonel Tommy Orr—that she needed to continue on light duty due to the misdiagnosis of her injury by a departmental "Workers Compensation Physician."[7] She alleges that she thereafter sought legal advice regarding her worker's compensation claim, and upon learning

---

[4] Complaint, [Dkt. 1] ¶14. All facts recited herein are drawn from Plaintiff's Complaint [Dkt. 1] unless otherwise noted.
[5] Complaint, ¶14.
[6] Id.
[7] Complaint ¶ 16.

of this, "her superiors became infuriated and began questioning her loyalty and taunting her about suing the department." [8]

*Denial of Time-Off*

The Complaint alleges that six months after her conversation with Col. Orr and Maj. Matson, in October 2013, her immediate supervisor, Captain Daniel Podsiadly, "began denying any time off requests for vacation and told [Ms. Reese] all future requests would also be denied. . ." and that "Major Matson was not inclined to give people on light duty time off."[9] At a later time (not identified in the Complaint) Ms. Reese claims she "became aware that vacation time was granted to a Caucasian male –officer in a similarly situated position" whereupon she voiced her concerns regarding the denial of vacation time to Major Matson who allegedly accused Ms. Reese of being "sneaky" and untrustworthy.[10]

*Reese's Complaint to Human Resources*

In November 2013, the Complaint alleges, Ms. Reese reported the above to Human Resources and "reached out to the EEOC to investigate the disparate treatment she was receiving."[11] She thereafter met with the City of Forest Park's

---

[8] Id.
[9] Complaint ¶17.
[10] Id.
[11] Complaint ¶18. She does not allege that she reported "reaching out to the EEOC" to Defendants.

legal representative who told her he had investigated her complaints, that she "had no case" and that she could "avoid any further issues" by "return[ing] back to regular duty."[12]

*Reese's Complaint to City Management*

The Complaint alleges Ms. Reese had a meeting with City Manager Frank Brandon, Police Chief Dwayne Hobbs, and Christine Terrell regarding the unspecified "discrimination" she suffered.[13] She claims Chief Hobbs "repeatedly attacked her alleging she failed to cooperate in the interactive dialogue process" and "accused her of refusing to provide updates on the condition of her injury and stated she failed to consult with her superior officers regarding the status of her injury."[14] Ms. Reese maintains that she had in fact "continuously updated Captain Podsiadly and Major Matson on the status of her injury, but that they "conveniently chose not to relay these facts to appropriate personnel."[15] The Complaint admits that during the meeting, City Manager Brandon "questioned [her] about what she wanted going forth" and then informed her of his own desires by stating "I just want to see your pretty face out there."[16]

---

[12] Id.
[13] Complaint ¶ 19.
[14] Id..
[15] Id..
[16] Id..

*Defendants' Alleged "Retaliation and Harassment" After Reese filed her EEOC Charge*

The Complaint alleges that Ms. Reese filed an EEOC complaint in January 2014,[17] and that after discovering this Defendants' "harassing and retaliatory behavior intensified."[18]

She identifies this "intensified" "harassing and retaliatory behavior" as follows: Captain Podsiadly at some unspecified time told her "she was no longer allowed to speak to any supervisors other than him;[19] Ms. Reese "was given a workstation facing the wall where she was isolated and alienated from everyone";[20] she was allotted a work schedule as administrative staff from 7:00AM to 4:00PM beginning Wednesday and ending on Sunday every week without a single weekend off," while all other administrative personnel worked 8:00AM to 5:00PM Monday through Friday."[21] She alleges she inquired about her "divergent work schedule to Colonel Orr" and that "he acknowledged . . . Reese was the only employee scheduled to work every weekend but he failed to remedy the disparate

---

[17] Complaint ¶ 20.
[18] Complaint ¶21
[19] Id.
[20] Id.
[21] Id. She further alleges: "Even police officers who worked 12 hour shifts were allowed to rotate every other weekend off"; but she fails to note that she was not performing the duties of police officers or working 12 hour shifts.

treatment."[22] She claims she "requested a Sunday off to practice her faith and attend her child's presentation at the church," but "her request [was] denied [and] she was asked several probing questions about why she wanted to attend church."[23] Also among the acts that she identifies as "retaliatory" and "harassing" are Ms. Reese' claim that she "was docked pay for being late if she was a second past 7:00AM"[24] and that when she inquired about her accumulated vacation and sick time hours beginning "to dwindle . . .no one could provide her with a reasonable explanation as to why."[25]

*Reese's Failure to Qualify with Her Firearm.*

The Complaint alleges that Ms. Reese's "weapons were taken from her possession" after she lost her POST certification as a peace officer because she had failed to complete the weapons qualification test required to maintain her POST certification.[26] She attributes her failure to complete the test to her "disability" and to Defendants' failure to make "accommodations . . . to enable her to complete the

---

[22] Id.

[23] Id.. MThe Complaint does not identify who denied her the time off or who asked her the questions.

[24] Id. The Complaint does not claim that the City failed to dock the pay of any other employee who reported late to work.

[25] Id. The Complaint does not specify when any of these events occurred in relation to her filing her EEOC charge.

[26] Id.¶22.

weapons qualification test."[27] While claiming that Defendants made no accommodations, however, the Complaint also alleges that Major Matson told her that "he may allow her to take the weapon certification test at the gun range on ladies night or possibly allow her to take the test if she was able to shoot while sitting, but he never confirmed a date for testing nor scheduled her to take the test."[28] Additionally, she complains that "to further humiliate and alienate Officer Reese" her uniform, belt, and departmental ID "identifying her as a police officer" were taken from her; but that she was allowed to keep a keycard.[29]

*Hostile Work Environment Claim*

Ms. Reese claims that she "has been subjected to a hostile work environment for over a year."[30] The Complaint fails to specify whether the alleged "hostile work environment" was a consequence of Ms. Reese's race, gender, alleged disability or a combination thereof. Further, it alleges no facts that might be construed either individually or cumulatively, as "so serious that they unreasonably interfered with her ability to do her job." Nor any offensive conduct resulting from any protected characteristic that was so frequent or widespread as to be considered "pervasive"

---

[27] Id.

[28] Id.

[29] Id. She fails to note, however that the removal of her uniform and equipment identifying her as a police officer is a necessary consequence of her loss of certification as a peace officer.

[30] Complaint ¶ 24.

and to have changed her working environment. The Complaint offers no factual basis for her subjective conclusion that "her employers have dismissed her existence and have consistently treated her as if she does not matter" upon which the Court can premise a finding that she was subjected to an unlawfully hostile working environment. The Complaint provides three examples of such "hostile" behavior:

- An occasion when she made an appointments with her superiors "to discuss the issues only to discover that after making her wait over an hour and a half they would knowingly leave the office without informing Officer Reese;"[31]

- An occasion that she "was ordered to undertake work that posed a serious danger to her health" based on the "no running" stipulation in her medical report condition;[32] and finally,

- That, despite Chief Hobbs' assurance to her that "if she was relegated to a civilian working with the Police Department, she would be placed in a position she was qualified for," she was "passed over for several civilian positions which she was qualified to fill."[33]

---

[31] Id.
[32] Id.
[33] Id. The Complaint does not specify what positions she failed to attain, when the Police Department filled the positions, whether Ms. Reese requested consideration for the positions, or why the positions might be more desirable than the one she held.

*Ms. Reese's Other Claims*

The Complaint rounds off Ms. Reese's "factual" allegations with the conclusory but non-specific claim that "for the past several months" she has been subjected to a shocking barrage of discrimination, harassment and retaliation on the basis of race and gender under Title VII and disability under the ADA."[34] It defines the non-specific allegation only by stating: "Despite many written complaints to bring an end to the discriminatory and harassing conduct her employers have accused her of being ungrateful, sneaky and have turned a blind eye to her increasingly desperate plight."[35] It provides no factual or legal frame of reference, nor identification of the acts that she concludes were "discriminatory and harassing" other than their alleged accusations that she was "ungrateful" and "sneaky" and were indifferent to her "increasingly desperate plight."

## ARGUMENT AND CITATION OF AUTHORITY

### A.    Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."[36] The Supreme Court has stated that when considering a Rule 12(b)(6) motion to dismiss, while courts should construe the

---

[34] Complaint ¶25.
[35] Id.
[36] Fed. R. Civ. P. 12(b)(6).

complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true[37] a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[38]  Courts also have noted that "[c]onclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts . . . are not entitled to the assumption of truth."[39] The Supreme Court has stated that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] The Court in *Iqbal* encourages lower courts to apply their "judicial experience and common sense" to decide whether a plaintiff's legal claims and allegations are sufficient to proceed to discovery.[41]

**B.     All Individual Defendants enjoy qualified immunity as public officials**

As the Supreme Court held in *Harlow v. Fitzgerald*, "government officials are entitled to some form of immunity from suits for damages . . . to shield them from undue interference with their duties and from potentially disabling threats of

---

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937; *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S. Ct. 2197 (2007); *Bell Atlantic Corp.v.Twombly*, 550 U.S. 544 at 555–56; 127 S. Ct. 1955 (2007).
[38] *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570).
[39] *Burrows v. College of Cent. Fla.*, 2014 U.S. Dist. LEXIS 174122, 4 (M.D. Fla. Dec. 17, 2014) (citing *Iqbal*, 556 U.S. at 679; *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003)).
[40] *Iqbal*, 556 U.S. at 678.
[41] *Id.* at 664–665.

liability."[42] The "qualified immunity" granted to public officials in guarantees that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known."[43]

Furthermore, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Thus, until the "threshold immunity question is resolved, discovery should not be allowed."[44]

In this case, all Individual Defendants are public officials accused of taking adverse employment actions in the course of their official duties against Plaintiff Reese on the basis of gender and race, in violation of 42 U.S.C. § 1983. As is discussed throughout the remainder of this brief, Ms. Reese has utterly failed to allege any facts leading to a reasonable inference that any discriminatory actions were taken against her. Under such circumstances, dismissal of all claims for monetary relief against the Individual Defendants is appropriate on the basis of qualified immunity. Ms. Reese will be unable to show that any Individual

---

[42] 457 U.S. 800, 806, 102 S. Ct. 2727, 2732 (1982).
[43] *Id.* at 818.
[44] *Id.* at 817–819.

Defendant violated a clearly established law where she cannot even show a plausible violation of law.[45]

## C. Defendant Forest Park Police Department is not a legal entity capable of being sued

A 12(b)(6) motion "may properly be utilized to assert a defense of lack of capacity to sue." In *Cravey v. Southeastern Underwriters Ass'n*, the Georgia Supreme Court identified three types of entities capable of suing and being sued: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue."[46]

An entity such as the Forest Park Police Department—which is neither a natural person or artificial person—would require statutory definition of its right to sue or be sued in order to be a party to a lawsuit under Georgia law. The Forest Park Police Department, a subdivision of the City of Forest Park, is not such an entity and thus it is a not a legal entity capable of being sued.

The Eleventh Circuit Court of Appeals has noted that "[s]heriff's departments and police departments are not usually considered legal entities

---

[45] *Saucier v. Katz*, 533 U.S. 194, 212-213, 121 S. Ct. 2151, 2162 (2001) (qualified immunity analysis begins with the preliminary question of whether the plaintiff has alleged facts showing that a constitutional violation occurred) (as modified in *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).
[46] 214 Ga. 450, 453, 105 S.E.2d 497 (1958); *see also* G*eorgia Insurers Insolvency Pool v. Elbert County*, 258 Ga. 317, 318 (1988).

subject to suit...."[47] That observation is consistent with a long line of cases from the 11th Circuit and district courts in this Circuit concluding that police and sheriff's departments are not legal entities subject to suit.[48]

Because Defendant Forest Park Police Department is not a legal entity subject to suit, Plaintiff's claims against it fail as a matter of law. This Court should therefore dismiss with prejudice all Plaintiff's claims against the forest Park Police Department.

## D. The Individual Defendants cannot be sued in their personal capacities under Title VII or the ADA.

The Eleventh Circuit has noted that: "[A] Title VII claim may be brought against only the employer and not against an individual employee."[49] This is because " 'the relief granted under Title VII is against the employer, not [against]

---

[47] *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law).

[48] *See Lawal v. Fowler*, 196 F. App'x 765 (11th Cir. 2006) (the Douglas County, Georgia Sheriff's Department was not a legal entity subject to suit in a § 1983 action); *Lovelace v. Dekalb Cent. Probation*, 144 Fed. App'x 793, 795 (11th Cir. 2005) (Dekalb County, Georgia Police Department was not a legal entity subject to suit under § 1983); *Williams v. Muscogee Cnty. Sheriff's Dep't*, No. 4:09-CV-33, 2009 WL 1457156, at *2 (M.D. Ga. May 22, 2009) ("Defendant Muscogee County Sheriff's Department is not a 'person' within the meaning of 42 U.S.C. § 1983."); *Nesbitt v. Chatham Cnty. Sheriff's Dep't*, CV406-167, 2006 WL 3248383, at *2 (S.D. Ga. Nov. 6, 2006) ("The Chatham County Sheriff's Department is not an entity subject to suit under § 1983."); 25 Fed. Proc., L. Ed. § 59:97 (Nov. 2011) ("[a] local governmental entity, such as a county sheriff's department, which lacks capacity to be sued under the applicable state law, may not be sued in federal court under the provisions of Fed. R. Civ. P. 17.") (citing *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992)).

[49] *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).

individual employees whose actions would constitute a violation of the Act.' "[50]

"Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of 'employer' and 'courts routinely apply arguments regarding individual liability to all three statutes interchangeably.' "[51]

In this case, Plaintiff has brought under Title VII and the ADA against individual Defendants City Manager Frank Brandon, Chief of Police Dwayne Hobbs, Assistant Chief Colonel Tommy Orr, Patrol Division Commander Major Chris Matson, and Ms. Reese's immediate supervisor, Captain Daniel Podsiadly, and in their personal capacities. These include Count One (Racial Discrimination), Count Two (Gender Discrimination); Count Three (Disability Discrimination and Failure to Accommodate); and Count Four (Harassment and Retaliation).[52] All of these claims fail with respect to the Individual Defendants as a matter of law because neither Title VII nor the ADA authorize relief against individual employees in their personal capacities, even those whose actions are alleged to have violated those statutes.

---

[50] *Id.* (quoting *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)).
[51] *Id.* at 934 (quoting *United States EEOC v. AIC Security Investigations*, 55 F.3d 1276, 1279–80 (7th Cir. 1995).
[52] Plaintiff labels her fourth and fifth counts both as "Count Four" and her sixth count as "Count Five." For the sake of clarity, Defendants will refer to the counts as one through six, in the order they appear.

Because Plaintiff's Title VII and ADA claims against the Individual

Defendants in their personal capacities fail as a matter of law, this Court should

dismiss those claims with prejudice.

**E.     Plaintiff fails to state a claim against Defendant City of Forest Park and against all Individual Defendants in their official capacities with respect to her § 1983 claim**

A claim against a municipal employee in his official capacity is deemed

brought against the municipality itself.[53] Thus, for the sake of simplicity, only

municipal liability will be referenced going forward.

Unlike under Title VII and the ADA, a § 1983 plaintiff must prove that the

defendant engaged in *intentional discrimination* by subjecting her to disparate

treatment in violation of her federally-protected rights to recover from a

municipality.[54] A plaintiff cannot recover under §1983 against a municipality

unless she shows that the alleged discriminatory acts were performed pursuant to a

**municipal policy, practice or custom**.[55] "[U]nder appropriate circumstances"

policy may be proven by the single decision of municipal officials " 'whose acts or

---

[53] *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358 (1991).
[54] *See, e.g., Personnel Administrator of Mass. 4 v. Feeney*, 442 U.S. 256, 274, 99 S. Ct. 2282, 2294 (1979); *Dothard v. Rawlinson*, 433 U.S. 321, 331–32, 53, 97 S. Ct. 2720 (1977).
[55] *See, e.g., Jett v. Dallas Independent School District*, 491 U.S. 701, 712, 109 S. Ct. 2702, 2711 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94, 98 S. Ct. 2018 (1978); *Ludaway v. City of Jacksonville*, 245 Fed. App'x 949, 951 (11th Cir. 2007).

edics may fairly be said to represent official policy.' "[56] But liability under § 1983 cannot be premised on a theory of *respondeat superior*, i.e., simply because a municipality employs a tortfeasor.[57]

"[T]he Eleventh Circuit has held that a single act may be county policy if the action is performed by a county official who is "the final policymaker . . . with respect to the subject matter in question."[58] "Whether an official is a final policymaker is a question of state law for the trial judge."[59] In making that determination, courts "should look to the relevant positive law, including ordinances, rules, and regulations, as well as the relevant customs and practices having the force of law."[60] "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review."[61]

---

[56] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298–1299 (1986) (quoting *Monell*, 436 U.S. at 694); *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997).

[57] *See, e.g., Jett*, 491 U.S. at 733–36; *Monell*, 436 U.S. at 690–91.

[58] *Hooks v. Brogdon*, 2007 U.S. Dist. LEXIS 72585, 5-6, 2007 WL 2904009 (M.D. Ga. Sept. 29, 2007) (citing *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989); *Aspinwall v. Herrin*, 879 F. Supp. 1227, 1244 (S.D. Ga. 1994)).

[59] *Id.* (citing *Mandel*, 888 F.2d at 793).

[60] *Id.* (citing *Mandel*, 888 F.2d at 793).

[61] *Morro*, 117 F.3d at 514 (11th Cir. 1997) (police chief not a final policymaker because his decision was subject to review) (citing *Scala v. City of Winter Park*, 116 F.3d 1396, 1403 (11th Cir. 1997) (city manager was not a final policymaker with respect to employment termination decisions where those decisions were reviewable by the city civil service board); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir.1991) (mayor was not a final policymaker with respect to zoning decisions where the city charter provided that the city

### 1. *Plaintiff has not plausibly pleaded discrimination pursuant to a municipal policy or custom*

Assuming for the moment that Ms. Reese could show intentional discrimination by at least one individualdefendant in her chain-of-command, her § 1983 claim against the City nonetheless must fail because the Complaint does not allege that any discriminatory acts were committed pursuant to a municipal policy, practice or custom. Not only does Ms. Reese fail specifically to plead the existence of a discriminatory custom or policy in her Complaint, but the facts she has alleged essentially preclude the very possibility.

Ms. Reese offers no direct evidence of discrimination on the basis of her gender or race. While she alleges that City Manager Brandon said he wanted to see her "pretty face" back out there [on patrol] this innocuous statement is, in fact, the opposite of direct evidence of racial or gender based *animus.* Her claim that Captain Matson offered to let her do her weapons testing at a shooting range on ladies night[62] likewise does not amount to direct evidence of gender-based bias. Other than the fact that she is African American, moreover, Ms. Reese does not offer a single fact from which the Court can conclude that she suffered adverse

counsel could override the mayor's veto of zoning ordinances); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996) (city police chief was not final policymaker with respect to employment decisions where his decisions could be reversed by the city manager)).

[62] Defendants believe it would be proper for the Court to judicially notice the facts that (1) the Forest Park Police Department does not have its own shooting range, and (2) "ladies nights" typically provide admission for females and no charge or reduced charge.

employment action because of her race. Her allegation that a Caucasian male who was permitted to take vacation time while serving on light duty is a "comparator" is nothing more than a bare legal conclusion. Such allegations fall far short of sufficiency as a matter of law to state a plausible claim of a discriminatory policy or custom.

2. *Plaintiff fails to allege that any final decision-maker engaged in any discriminatory act.*

Ms. Reese alleges that all five Individual Defendants committed discriminatory actions against her. Of the five Individual Defendants, only City Manager Brandon is a final decision-maker with respect to Mr. Reese's disability discrimination grievance. This is evidenced both by her own allegations regarding the meeting with Defendants Brandon and Chief Hobbs, and by the City's "Grievance Procedure Under the Americans With Disabilities Act" information sheet, published on the City of Forest Park's website.[63]

Since he is the sole Defendant who is a final decision-maker under the City's policies, only City Manager Brandon's actions could provide any basis for municipal liability for unlawful discrimination under § 1983. The sole allegation

_____

[63] Grievance Procedure Under the Americans with Disabilities Act, http://forestparkga.org/Grievance%20Procedure.pdf, last accessed March 8, 2015 (outlining appeal procedure to the City Manager who will issues a written "final resolution" of ADA complaints).

that the Complaint makes against Mr. Brandon is his passing statement regarding

his wanting to see her "pretty face" back out on patrol, *i.e.,* he wanted to see her

able to return to her regular police officer duties. To conclude that this statement –

a compliment or, at worse, a patronizing statement --  evidences any unlawful bias

in his consideration of her grievance would be patently ridiculous.

**F.    Plaintiff fails to state a claim against the City of Forest Park and the Individual Defendants in their Official Capacities with respect to her ADA and Title VII claims**

> ***1.    Plaintiff's disability discrimination and failure to accommodate claims.***

To establish a cause of action under the ADA, the Plaintiff must allege that

she was a "qualified individual." This means that the Complaint must allege that

Ms. Reese was:

> . . . an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.[64]

The Complaint does not allege that Ms. Reese is qualified to perform the essential

functions of a Forest Park Police Officer. In fact, the Complaint establishes that she

is not qualified to perform the essential functions of a Forest Park Police officer.

The Complaint establishes that: (1) Ms. Reese is not POST-certified as a police

officer; and (2) even if she was so certified, her "no running" permanent medical

---

[64] 42 U.S.C.§12111(8)

restriction prevents her from performing an essential function of a police officer's position. As the ADA provides :

> . . . for purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential . . . .[65]

The Complaint's failure to allege that Ms. Reese is qualified to perform the essential functions as a police officer is fatal to her ADA claims.

Even if Ms. Reese were qualified, however, she must also allege sufficient facts for the court to infer that she suffers from a "disability". As the ADA provides:

> The term "disability" means with respect to an individual –
> (A)      a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B)      a record of such an impairment; or
> (C)      being regarded as having such an impairment (as described in paragraph (3). [66]

Dismissal of an ADA action for failure to state a claim is appropriate where a plaintiff has failed adequately to allege how her impairment substantially limited her in the major life activity, thereby satisfying the ADA's definition of "disability."[67] When the major life activity under consideration is that of working,

---

[65] Id.

[66] 42 U.S.C. §12102(1)

[67] *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491–492, 119 S. Ct. 2139 (1999); 42 U.S.C. § 12102(2)(A).

the statutory phrase "substantially limits" in 42 U.S.C. § 12102(2)(A) requires, *at a minimum*, that a plaintiff allege she is *unable to work in a broad class of jobs.*[68]

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or particular choice of job. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.[69]

The Complaint does not even inform the Court or Defendants of the nature or degree of the impairment of any life activity that Ms. Reese's injury caused. Instead, it merely recites the legal conclusion that her condition qualifies as a "disability" under the ADA. The only limitations of the Plaintiff's life activities alleged in the Complaint is that Ms. Reese should not run. Even if this is a chronic or permanent condition such limitation of so narrow a range of activities does not amount to a substantial impairment of any major life activity. Hence Ms. Reese's condition does not meet the definition of a disability, even under the more liberal standards of the 2008 Amendments to the ADA.[70]

---

[68] *Id.*
[69] *Id.*
[70] 42 U.S.C.§12102(4).

Ms. Reese cannot plausibly contend that Defendants' decision to place her on "light duty" while she recovered from her foot injury is evidence that she was "regarded as" disabled under the ADA.[71] Such an analysis would serve to discourage employers from accommodating employees' temporary or short-term injuries –whether they amount to a disability or not. Moreover Ms. Reese does not allege that the City reserves light duty assignments for persons with disabilities. In fact, her allegations make it clear that the Department envisions light duty as being merely a temporary assignment. Finally, even if Ms. Reese had alleged that she was "regarded as" disabled by defendants, this alone would not require Defendants to make any accommodation to her disability under the ADAAA.[72]

Whether or not that is the case, Ms. Reese has not pleaded sufficient facts to state a plausible claim of disability discrimination or failure to accommodate her disability. [73]

---

[71] 42 U.S.C. §12102(1)C).

[72] *See* EEOC Regulations To Implement the Equal Employment Privisions of the Americans with Disabilities Act, as Amended 29 CFR §§ 1630.2(k)(3), 1630.2(o), and 1630.9(e).

[73] Ms. Reese is not qualified to be a police officer because she has not passed the weapons certification as required by Georgia POST regulations, and because she is unable to run, an essential function of the Police Officer's position. However, because Ms. Reese's complaint about being stripped of her gun and badge relates directly to her retaliation claims, it will be discussed in that section below.

## 2. *Racial and sexual discrimination under Title VII*

The United States Supreme Court has held that Title VII is not "a general civility code for the American workplace."[74] The Eleventh Circuit has noted that it "was never intended to protect employees from all unpleasant and rude conduct in the workplace. It is an anti-discrimination statute."[75]

"Where direct evidence of discrimination is absent, a plaintiff establishes a **circumstantial, prima facie case of racial discrimination** based on disparate treatment by showing several things: '(1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorably; and (4) [she] was qualified to do the job.' "[76]

"Even in run-of-the-mill discrimination cases, [the Eleventh Circuit has] emphasized that plaintiffs are not permitted simply to 'rely on broad generalities in identifying a comparator.' "[77] And it is "clearly insufficient" to cite as the "only

---

[74] *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998).

[75] *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1253 (11th Cir. 1999) (Edmonson, J., concurring).

[76] *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)).

[77] *Leib v. Hillsborough Cnty. Pub. Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007) (analyzing whether comparators were "prima facie identical in all relevant respects")).

commonality" between a Title VII plaintiff and a would-be comparator "that they are both . . . employees [of the same entity] subject to the same regulations."[78]

Here, Ms. Reese has only alleged that she learned that a single, unnamed Caucasian male "administrative" employee had been permitted to take vacation while on light duty, while she was not. She does not identify the employee, nor provide any information about that employee's position, job duties, length of employment, seniority, or any other relevant information that could demonstrate that the other employee is a valid comparator. Ms. Reese simply relies on the "broad generalities" that the person is a similarly-situated comparator, against which the Eleventh Circuit has warned.

### 3.    *Retaliation under Title VII*

Section 704 of Title VII, 42 U.S.C. §2000(e)3(a) makes it unlawful to retaliate against an individual:

(i)      because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this [title]; or

(ii)     because he has opposed any practice made an unlawful employment practice by this [title]

The Supreme Court held in *University of Texas Southwestern Medical Ctr. v. Nassar,*[79] that retaliation claims under Title VII must be established using a "but

---

[78] *Anderson v. Creech*, 2013 U.S. Dist. LEXIS 16717, 12–14 (S.D. Fla. Feb. 7, 2013).

for" causation standard. That is, but for the plaintiff's protected activity the "adverse action" would not have resulted. Moreover, Title VII's anti-retaliation provision does not protect individuals from all retaliation, but only from "retaliation that produces an injury or harm . . . . [that] a reasonable employee would have found . . . materially adverse."[80] This means that the complained of conduct "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[81] This distinction exists because courts must "separate significant from trivial harms."[82] Thus, courts must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"[83] "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."[84]

---

[79] 133 S.Ct 978 (2013)
[80] *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67–70, 126 S. Ct. 2405, 2414–2416 (2006).
[81] *Id.* (quotation omitted).
[82] *Id.*
[83] *Id.* (quoting *Faragher*, 524 U.S., at 788, 118 S. Ct. 2275 ………)
[84] *Id.* (citing LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and " 'snubbing' by supervisors and co-workers" are not actionable under § 704(a)).

Ms. Reese's Complaint fails to satisfy either the *Burlington Northern* or the *Nassar* standards. She complains that after she went to the EEOC and filed a formal complaint the following events occured:

(1)     Captain Podsiadly told her she should not contact other supervisors and speak only with him;

(2)     Someone gave her a workstation facing a wall;

(3)     Someone told her supervisors to "find something to do with her";

(4)     She was made to work Wednesday through Sunday, unlike some other employees;

(5)     Her pay was (or would be) docked if she were late to work;

(6)     She noticed her vacation time decreasing and was not given a "reasonable explanation" for it;

(7)     Her weapons, badge, and other items related to police work were taken from her;

(8)     Someone ordered her "to undertake work that posed a serious danger to her health";

(9)     She was passed over for jobs she was qualified for.

The first five and the seventh items plainly are entirely reasonable actions dictated by ordinarily prudent management considerations. Captain Podsiadly's

direction that she follow the chain of command rather than bringing her complaints to superior officers outside her chain of command is essential to discipline and effective management in a paramilitary organization like a police department. Workstations must be located where they need to be to accomplish the tasks the employee needs to accomplish. She does not allege that her workstation was located in a place where she did not perform her regular administrative duties, nor that her workstation was the only one that faced a wall. "Finding something for her to do" simply indicates that the Police Department was attempting to keep her employed and drawing a paycheck after she could no longer perform her duties as a police officer. Requiring her to work Wednesday through Sunday assured coverage of her position on weekends—again serving a legitimate management objective. Deducting pay when she was tardy is a lawful way to ensure that she and other employees are at their jobs promptly at the starting times prescribed for them.

The removal of Ms. Reese's weapons, badge, and other items related to police work was merely the necessary consequence of the fact that she no longer was a certified peace officer. She admits in her Complaint that "she was unable to carry out her weapons certification" due to her "disability." It was her inability to pass that certification requirement that resulted in the actions about which she

complains. Georgia law requires that all peace officers pass certain training in order to exercise the powers of a law enforcement officer:

> (a)  Any peace officer so employed who does not comply with this chapter **shall not be authorized to exercise the powers of a law enforcement officer** generally and particularly shall not be authorized to exercise the power of arrest.[85]

and

> (a)  No person required to comply with the certification provisions of this chapter shall . . . . **perform any of the duties of a peace officer** involving the power of arrest **until such training shall have been successfully completed**.[86]

Thus, Ms. Reese's superiors could not allow her to retain her gun and badge when she fell out of compliance with the requirements of Georgia law.

Accordingly, Ms. Reese has not alleged facts which demonstrate that "but for" her protected activity she would not have suffered the "adverse actions" to satisfy the *Nassar* requirement.

The remaining allegedly retaliatory actions do not amount to "adverse actions sufficient to discourage a reasonable employee from exercising her rights under Title VII. They are—at worst—simply the types of "petty slights or minor annoyances" that cannot form the basis of a retaliation claim.  As to her "disappearing vacation time" claim the Complaint does not allege that Ms. Reese's

---

[85] O.C.G.A. § 35-8-17.
[86] O.C.G.A. § 35-8-10.

superiors failed to explain why her vacation hours appeared to diminish (whether she considered their explanations reasonable or not). She does not claim that this was erroneous, and, if so, that the Defendants refused to correct the error. She does not identify who was responsible for the deductions or whether that individual was even aware of her protected activities. She provides no other information that could establish that this was an act of retaliation.

Similarly, Ms. Reese does not state identify the "dangerous work" that she was ordered to perform or who ordered her to do it, precluding any evaluation of that action as retaliatory. And likewise, she does not state that she actually applied for the jobs for which she says she was passed over. As stated, Ms. Reese has given so little information that these complaints cannot be considered more than a legal nullity.

Despite her long list of grievances directed at Defendants, Ms. Reese cannot state a single plausible act of retaliation that any of the seven Defendants she has named in her suit committed. All her complaints either relate to trivialities not cognizable under the law, or can be justified by ordinary considerations of good management and common sense.

**G. Plaintiff fails to state a claim as to the Individual Defendants in their personal capacities with respect to her § 1983 claim**

"[A] supervisor may be held liable under section 1983 if the supervisor had *personal involvement* in the constitutional deprivation or if a sufficient *causal connection exists* between the supervisor's conduct and the constitutional violation."[87] A defendant may be personally involved in a constitutional deprivation by "(1) direct participation; (2) failure to remedy the wrong after learning about it; (3) creation of a policy or custom under which unconstitutional practices occur; or (4) gross negligence in managing subordinates who caused the violation."[88]

Even in circumstances where an individual entertains a subjectively discriminatory animus the Complaint must demonstrate facts from which a court can infer that there is a *causal connection* between the wrongful act and the constitutional or federal statutory deprivation as an essential element of any § 1983 claim.[89] "[T]he Eleventh Circuit has held that causation does not exist 'when the continuum between [a] Defendant's action and the ultimate harm is occupied by

---

[87] *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992).
[88] *Bensch v. Metropolitan Dade County*, 798 F. Supp. 678, 680-681 (S.D. Fla. 1992) (quoting *Gallegos v. Haggerty*, 689 F. Supp. 93, 104 (N.D.N.Y. 1988).
[89] *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002).

the conduct of deliberative and autonomous decision-makers."[90] And where

another body of decision-makers intervenes in that way, a § 1983 claim alleging

that an individual lower in the hierarchy caused a constitutional deprivation "is

implausible on its face."[91] Moreover, mere involvement in a chain of decision-

making by a second individual following the discriminatory acts of a first

individual is not sufficient to create personal liability for the second individual

under § 1983.[92]

### a.    City Manager Brandon

Defendant Brandon attended a single meeting with Defendant Hobbs and

Plaintiff Reese. At that meeting he presumably did not agree that the Department

had failed to accommodate Ms. Reese in any way required by law. At the

conclusion of the meeting he stated, "I just want to see your pretty face out there."

Ms. Reese has alleged no facts showing intentional discrimination on the

basis of sex or race by Defendant Brandon.

---

[90] *Files v. DeKalb County Sch. Dist.*, 2012 U.S. Dist. LEXIS 28454, 11-14, 2012 WL 716055 (N.D. Ga. Mar. 2, 2012) (citing *Dixon*).
[91] *Id.*
[92] *See*, *e.g.*, *Files*, 2012 U.S. Dist. LEXIS 28454, 11–12 ("there are no allegations in the complaint to suggest that defendant Tyson was complicit in Jester's racially motivated plan. . . . [her] position as Superintendent during the redistricting process is not in itself sufficient to infer racial discrimination or to hold her liable under § 1983.") (citing *Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004) (explaining that an individual is generally only liable under § 1983 for his own personal actions).

### b. Chief of Police Hobbs

Ms. Reese's only interaction with Chief Hobbs was the meeting with City Manager Brandon. At that meeting, Chief Hobbs "accused her of refusing to provide updates on the condition of her injury and stated she failed to consult with her superior officers regarding the status of her injury."

Ms. Reese has alleged no facts showing intentional discrimination on the basis of sex or race by Defendant Hobbs.

### c. Colonel Tommy Orr

According to Ms. Reese, she asked Colonel Orr about "her divergent work schedule" and he "failed to remedy the disparate treatment." She does not allege that he assigned her the schedule, that he had the power to alter it, or if he provided her with an explanation for her Wednesday through Sunday schedule. Ms. Reese also alleges that Colonel Orr was involved in taking away her weapon, badge, and other equipment. She has not alleged any other fact from which the court could infer that her work schedule was a consequence of her race or gender.

Ms. Reese has alleged no facts showing intentional discrimination on the basis of sex or race by Defendant Orr.

### d.     Captain Podsiadly

Defendant Podsiadly allegedly denied Ms. Reese's time off requests pursuant to a policy established by Defendant Matson. Ms. Reese first claims in paragraph 22 of her Complaint that Major Matson suggested she do her POST certification at a shooting range on ladies' night, but later in paragraph 31 claims that Captain Podsiadly made the suggestion.

Ms. Reese has alleged no facts showing that her basis sex or race had any connection with Captain Podsiadly's actions.

### e.     Major Chris Matson

Ms. Reese alleges that Mr. Matson "repeatedly questioned [her] about her off work activities and relayed to her she was sneaky and could not be trusted." She also claims that he suggested that she might perform her POST certification at a shooting range on ladies night, "but he never confirmed a date for testing nor scheduled her to take the test." These facts alone provide no basis for the court to infer that Major Matson's decisions were dictated or even influenced by her race or gender. Ms. Reese has alleged no facts showing intentional discrimination on the basis of sex or race by Defendant Matson.

**H.  Plaintiff fails to state a claim as to all Defendants with respect to her claim for Intentional Infliction of Emotional Distress**

A valid claim for Intentional Infliction of Emotional Distress ("IIED") requires that she Plaintiff allege four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe."[93] "The issue of whether the conduct at issue rises to the requisite level of outrageousness is a question of law for the trial court."[94] The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it."[95]

"When the acts of an employer, even when proven, are not sufficiently outrageous and egregious to constitute intentional infliction of emotional distress, the employer is entitled to judgment as a matter of law."[96] Additionally, under Georgia law an employer is not liable for an employee's intentional torts such as IIED, unless the employer has ratified the offending conduct.[97]

---

[93] *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 231 (2011) (quotation omitted).
[94] *Id.* (citing *Johnson v. Savannah College of Art &c.*, 218 Ga. App. 66, 67, 460 S.E.2d 308 (1995)).
[95] *Jones v. Warner*, 301 Ga. App. 39, 43 (3) (2009) (punctuation omitted).
[96] *Bd. of Pub. Safety v. Jordan*, 252 Ga. App. 577, 586, 556 S.E.2d 837, 844 (2001) (citing *Fox v. Ravinia Club*, 202 Ga. App. 260, 262, 414 S.E.2d 243 (1991)).
[97] *See Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 673(3), 347 S.E.2d 619 (1986); *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 501, 469 S.E.2d 776 (1996).

Here, Plaintiff Reese has failed to allege facts sufficient to state a plausible claim for IIED because (1) she has not alleged any conduct by any of Defendants that was extreme and outrageous, and (2) she has not alleged any facts showing that she suffered severe emotional distress. Because Plaintiff has failed to state a plausible claim for IIED, that claim should be dismissed as to all Defendants, and with prejudice.

### a.    Failure to plead extreme and outrageous conduct

"It is not enough to show that the defendant 'acted with an intent which is tortious or even criminal, or that he . . . intended to inflict emotional distress, or even that his conduct [was] characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "[98]

"[I]solated instances of . . . tasteless and rude social conduct . . . is not actionable."[99] "Comments made within the context of one's employment may be horrifying or traumatizing, but . . . . [sufficiently outrageous conduct] does not

---

[98] *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 232 (2011) (quoting J*ohnson v. Allen*, 272 Ga. App. 861, 865 (2) (2005)).

[99] *Hendrix v. Phillips*, 207 Ga. App. 394, 395, 428 S.E.2d 91, 92 (1993) (citing *Kornegay v. Mundy*, 190 Ga. App. 433, 379 S.E.2d 14 (1989)).

include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living."[100]

At this point it seems redundant to review Ms. Reese's allegations to scour them for outrageous conduct. She has not alleged anything of the sort. She has not even alleged that a Defendant cursed at her. She was called "sneaky" and untrustworthy. She was given a desk facing a wall. She was expected to show up to work on time. Her gun and badge were taken away as required by Georgia law.

Nothing alleged by Ms. Reese constitutes "extreme and outrageous" conduct, and her IIED claim thus fails as a matter of law.

### b.  Failure to plead severe emotional distress

Ms. Reese claims in her Complaint that, "[a]s a direct and proximate result of Defendants' unlawful conduct [she] has suffered severe emotional distress." She alleges no physical symptoms. She does not claim to have even visited a psychologist, psychiatrist, social worker, counselor, or pastor. She does not claim to take any medication for stress, anxiety, or depression.

Nowhere in her Complaint does Ms. Reese's allege specific facts plausibly showing that she has suffered severe emotional distress. Again, her claim must fail as a matter of law, and this Court should dismiss it with prejudice.

---

[100] *Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 454, 651 S.E.2d 790, 792 (2007) (quoting *Jarrard v. United Parcel Svc.*, 242 Ga. App. 58, 59, 529 S.E.2d 144 (2000).

## CONCLUSION

Based on the foregoing, Defendants request that this Court:

(1)     Dismiss Plaintiff's Complaint in its entirety;

(2)     Dismiss all claims against Forest Park Police Department with

prejudice;

(3)     Dismiss all ADA and Title VII claims against the Individual

Defendants with prejudice;

(4)     Dismiss all § 1983 claims against the City of Forest Park and the

Invididual Defendants in the official capacities with prejudice; and

(5)     Dismiss all State law claims with prejudice.

This 9th day of March 2015.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS**
**& FITZPATRICK, LLC**

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
Telephone: (404) 979-3171
Facsimile: (404) 835-6168
michaelcaldwell@dcbflegal.com

*/s/ Michael A. Caldwell*
Michael A. Caldwell
Georgia Bar No. 102775


**COUNSEL FOR DEFENDANTS**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **WHITNEY HOUSTON REESE,** | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 1:15-cv-337-RWS-WEJ |
| **CITY OF FOREST PARK et al.,** | |
| **Defendants.** | |

## CERTIFICATION OF COMPLIANCE AND CERTIFICATE OF SERVICE

I hereby certify pursuant to LR 7.1 that the foregoing document has been prepared in Times New Roman 14 point font, which is one of the font and point selections approved by the court in LR 5.1C.

I further certify that on this day I filed the foregoing document in the Court's CM/ECF system, thereby ensuring delivery by electronic mail upon all counsel of record.

Dated: March 9, 2015.

_/s/ Michael A. Caldwell_
Michael A. Caldwell
Georgia Bar No. 102775